COMMONWEALTH *vs.* GEORGE W. MESERVE & another.

Suffolk.    March 30, 1891. — May 26, 1891.

Present: C. ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Indictment — Conspiracy — False Pretences — Evidence — Witness — Variance — Exceptions.*

An indictment alleging that the defendants M. and F. had unlawfully conspired with K. to defraud a corporation named out of certain building material, under the color of a pretended contract made between K. under the assumed name of B. and the corporation for furnishing the same and putting it into a building for K., and upon his credit under such name, by means of the false pretences to be made to the corporation by M. that K. was B., a man of wealth, and under that name was erecting a building, which he owned with the land under it, and needed such material therefor, and that K. under that name had given him, M., authority to make the contract on his behalf and under that name with the corporation, and intended to pay for such material and for putting in the same whenever the payment for the same should become due.    *Held*, that the charge was of a conspiracy to obtain goods under the color of a contract between K. and the corporation, in which K. should pretend to be B. and should assume that name to be his own, and in which various other pretences were to be made in reference to the supposed B.; and that the indictment was sufficient.

It is within the discretion of the presiding judge at a trial to permit a leading question to be put to a witness in direct examination.

Upon the trial of an indictment for a conspiracy to obtain goods by means of a contract, to be fraudulently made by one K. under the assumed name of B., it is competent, for the purpose of establishing K.'s real name, to show that shortly before the alleged conspiracy he was married under the name of K., that he was usually known as K. or as St. C., and that his wife, while thereafter living with him, and before the date of the conspiracy, bore the surname St. C.

The erroneous admission of testimony in support of one count of an indictment, upon which the accused is acquitted, is not ground of exception.

The inability of a witness to read writing does not necessarily render him incompetent to testify to the identity of a written paper.

Upon the trial of an indictment for conspiracy, evidence of certain acts which took place several months subsequent to the date of the alleged conspiracy were *held* to be properly excluded.

Upon the trial of an indictment alleging a conspiracy to obtain goods by false pretences to be made by one K., to the effect that his name was B. and that he lived in a certain town and owned real estate there, residents of that town may testify that they know of no such person, although no one of them can state that he knows every resident in the town.

At such trial, an old resident of the town, who testifies that he is the register of deeds and town clerk, having the custody of the town records and assessors' books, and is familiar with them and with the people and land in the town, and that he is also a real estate agent and conveyancer, and has searched the records a good deal, may testify that no person of the above description owns real estate in the town, although he has not made special search with reference to testifying.

At the trial of an indictment against M. and F., for a conspiracy with K. to cheat under color of a contract to be fraudulently made by K. under the assumed name of B., evidence that K's. wife made a statement to F's. wife respecting the latter's husband in his absence, and that K. had written letters to a woman surnamed B. who was not a witness and whose relation to him was not shown, is incompetent.

A count charging a conspiracy to obtain goods by different indictable false pretences is supported by evidence of a conspiracy to cheat by some one of those pretences.

If an averment in an indictment is of a conspiracy to obtain certain goods, proof of a conspiracy to obtain goods and labor is no variance.

If a party makes no specific requests for instructions, a general exception to specified portions of the charge will not be sustained, unless some substantial error or injustice clearly appears.

Expressions in the rulings of the judge presiding at a trial, which standing alone might be the subject of exceptions, are to be qualified and interpreted by other rulings made in connection with them that would render such expressions unexceptionable.

INDICTMENT in five counts for a conspiracy to obtain goods by false pretences. The third count alleged that the defendants, " George W. Meserve and Nathaniel W. Foye, both of said Boston, together with one Samuel S. Kennedy, otherwise called

Samuel Kennedy, otherwise called Samuel Saint Clair, now deceased, being evil disposed persons, and wickedly devising and intending to cheat and defraud the Shreve, Crump, and Low Company, a corporation duly established and existing, on the first day of April in the year of our Lord one thousand eight hundred and eighty-nine, at Boston aforesaid, did unlawfully conspire, combine, confederate, and agree together falsely, knowingly, designedly, and fraudulently to cheat and defraud the said corporation out of a large quantity of property, goods, wares, and merchandise, of the property of the said corporation, that is to say, a large quantity of gas-pipe and gas-piping of great value, to wit, of the value of twenty-five dollars, under the color of a pretended contract between said Kennedy as and under the name of George Brown and said corporation, for furnishing and putting into a certain building hereinafter mentioned, by said corporation, said gas-pipe and gas-piping, for said Kennedy, and upon his said Kennedy's credit as and under the name of George Brown as aforesaid, by means of the false and fraudulent pretences thereafter to be made to said corporation by the said Meserve; that said Kennedy was one George Brown, who was a man of wealth and opulence residing in said Exeter, in the State of New Hampshire; that said Kennedy, as and under the name of George Brown as aforesaid, was constructing and erecting a building in that part of said Boston called East Boston, and was in need of gas-pipe and gas-piping for use in the constructing and erection of said building; that said Kennedy, as and under the name of George Brown as aforesaid, had given him, said Meserve, authority to make a contract, for and on behalf of said Kennedy, as and under the name of George Brown as aforesaid, with said corporation, for the furnishing and putting into said building by said corporation such gas-pipe and gas-piping; that said Kennedy, as and under the name of George Brown as aforesaid, was the owner of the said building and the land whereon said building stood; and that said Kennedy, as and under the name of George Brown as aforesaid, then intended to pay for the said gas-pipe and gas-piping and the putting in of the same, whenever the payment for the same became due."

The fifth count alleged that the defendants, " George W. Me-

serve and Nathaniel W. Foye, both of said Boston, together with one Samuel S. Kennedy, otherwise called Samuel Kennedy, otherwise called Samuel Saint Clair, now deceased, being evil disposed persons, and wickedly devising and intending to cheat and defraud one Job F. Bailey, on the second day of May, in the year of our Lord one thousand eight hundred and eighty-nine, at Boston aforesaid, did unlawfully conspire, combine, confederate, and agree together falsely, knowingly, designedly, and fraudulently to cheat and defraud the said Bailey out of a large quantity of goods, wares, and merchandise of the property of said Bailey, — that is to say, a large quantity of doors, windows, blinds, window-frames, and sash, to wit, sixty-three window-frames each of the value of three dollars, sixty-six doors each of the value of four dollars, fifty-four windows each of the value of three dollars, divers sash each of the value of one dollar, — under color of a pretended purchase of and from said Bailey of said property, goods, wares, and merchandise by said Kennedy, upon the credit of said Kennedy as and under the name of George Brown, by means of the false and fraudulent pretences thereafter to be made to said Bailey by said Meserve, Foye, and Kennedy, that said Kennedy was one George Brown, a man of wealth and in opulent circumstances, who then resided in Exeter, in the State of New Hampshire; that said Kennedy, so to be represented as George Brown as aforesaid, was the owner of real estate in said Exeter, of great value, to wit, of the value of between fifteen thousand dollars and twenty thousand dollars; that he, said Kennedy, so to be represented as George Brown as aforesaid, had recently theretofore sold seven thousand dollars' worth of real estate of him, said Kennedy, so to be represented as George Brown as aforesaid, in said State of New Hampshire, and had invested the proceeds thereof in property in said Boston; that said Foye was the agent of said Kennedy, so to be represented as George Brown as aforesaid, for the erection and construction of certain buildings in divers parts of said Boston and elsewhere in said Commonwealth; and that said Kennedy, so to be represented as George Brown as aforesaid, then intended to pay for said property, goods, wares, and merchandise, so falsely and fraudulently to be purchased and obtained as aforesaid, upon the credit of him, said Kennedy, as

and under the said name of George Brown, within thirty days after the delivery thereof."

At the trial in the Superior Court, before *Mason*, C. J., the jury returned a verdict of guilty against Meserve alone on the third count, and against both defendants on the fifth count, and of not guilty on the first and fourth counts; and the defendants alleged exceptions, which, so far as material to the points decided, appear in the opinion.

*E. Avery & G. R. Swasey*, for the defendants.

*A. E. Pillsbury*, Attorney General, (*C. N. Harris*, Second Assistant Attorney General with him,) for the Commonwealth.

C. ALLEN, J. The defendants were tried on four counts, the first, third, fourth, and fifth. Meserve was convicted on the third and fifth counts, and Foye on the fifth only. The objections urged are to the validity of the indictment, to the evidence, and to the instructions of the judge.

The motion to quash the third count rests on the ground that it is uncertain and vague, and that the defendants could not tell from it whether they were to be tried for a conspiracy to obtain goods by making an unauthorized contract for goods and labor, and also by means of false pretences, or whether they were to be tried for a conspiracy to obtain goods by means of a pretended contract for goods and labor, which said contract was to be obtained by false pretences. It appears to be sufficiently plain that the count charges a conspiracy to obtain goods under color of a contract between Kennedy and the corporation, in which Kennedy should pretend to be Brown; the name of Brown was to be pretended or assumed by Kennedy to be his own; and various other pretences were to be made in reference to the supposed Brown. The count is sufficient. *Commonwealth* v. *Walker*, 108 Mass. 309.

The objection to the fifth count is substantially similar.

Numerous objections were taken to the admission or exclusion of evidence, only a part of which are now insisted on.

The defendants contend that a question put on direct examination to the government witness, Amanda A. Kennedy, was leading. The objection was not put on that ground at the trial, and if it had been it was within the discretion of the presiding judge to allow it. *Green* v. *Gould*, 3 Allen, 465. *York* v. *Pease*, 2 Gray, 282.

It was competent to show that Kennedy, alias Brown, was married shortly before the conspiracy charged under the name of Kennedy, and that he usually went under that name, or the name of St. Clair, and also that his wife while living with him shortly before the time of the alleged conspiracy went under the name of Mrs. St. Clair. All this would have some tendency to show that the assumption of the name of Brown was a mere pretence, and that the agreement that he should assume that name for the purpose of obtaining goods on credit was a conspiracy to cheat.

The evidence of Meserve's conversation as to an attempt to get a horse in Dublin, New Hampshire, was given in connection with a conversation about a plan for Meserve and Kennedy to go to New Hampshire to get some brick by cheating somebody there. This testimony was in support of the first count, and had no relation to the third or fifth counts, on which alone a conviction was had. The jury having acquitted the defendants on the first count, the admission of this evidence, whether right or wrong, is now immaterial.

The judge might properly hold that the written documents testified to by Mrs. Kennedy were sufficiently identified to be laid before the jury, although she was unable to read. The mere fact that a witness cannot read writing does not necessarily render him incompetent to testify to the identity of a written paper. He still has the size, form, color, and general appearance of the paper, the color of the ink, and the size and general characteristics or appearance of the writing, to go by. For example, one might be allowed to testify to the identity of a paper written in Greek, Hebrew, Sanscrit, or Egyptian hieroglyphics, although unable to read a word of either language. The weight of the testimony would of course be for the jury.

The testimony of the witness Googin, which was excepted to, was offered under a misapprehension as to what her testimony would be, and this was stated as soon as she had answered the questions. The testimony was not injurious in its nature, and there is no reason to suppose that it prejudiced the defendant Meserve.

The witness Reed was asked on cross-examination whether his action with reference to foreclosure was influenced by an inter-

view with Mr. Pratt.  This action with reference to foreclosure and the interview referred to were several months after the date of the conspiracies charged in the indictment, and the question might properly be excluded as immaterial.

The evidence that the lumber sent to Newton Highlands was marked " George Brown," for a building which Foye was erecting there, had a tendency to show that Kennedy was then assuming the name of Brown, and that Foye was cognizant of it.  It bore directly upon the charge against Foye, and was competent for this purpose, although it may not have borne upon the charge against Meserve.  Moreover, this testimony appears to have had relation only to the first count, upon which the defendants were acquitted.

The question to the witness Carpenter, " What talk did you have with him ? " — that is, with Brown, — was properly allowed.  There had been sufficient evidence of a conspiracy between Meserve and Kennedy, alias Brown, to warrant the judge in admitting declarations by the latter.  No objection was taken to any particular part of the answer, on the ground that it related to matters outside of the charges in the indictment.

The witness Stark was asked on cross-examination for certain particulars as to the purchase of the Porter lot, so called, and of the building contract for that lot.  These particulars were properly excluded as immaterial.  That purchase was several months before the transactions which are charged in the indictment.  The fact that there was no attempt by Meserve to defraud in reference to that purchase and that building contract, if conceded, would be unimportant; if not conceded, the admission of the evidence would raise an issue of itself traversable and foreign to those on trial.  Moreover, it does not appear that it was urged against either of the defendants that there was an overvaluation in the original purchase of the Reed lot by Meserve from Reed.  There was no occasion to prove affirmatively that the price paid was reasonable.

The questions to the residents of Exeter were competent.  One principal element in the alleged conspiracy being that Kennedy should assume to be George Brown, a man of wealth, residing in Exeter, and then or recently an owner of real estate there, it was competent to show by the witnesses that they

knew of no such man. The witnesses testified to a general acquaintance with the inhabitants and owners of real estate in that town. It was not necessary that each witness should be able to state absolutely that he knew every resident. The witness Belknap testified that he was an old resident of the town, the registrar of deeds, the town clerk, having custody of the town records and assessors' books, and that he was familiar with them; that he was also a real estate agent and conveyancer, and had searched the records a great deal. He might properly be allowed to testify that there was no such owner of real estate in Exeter as George Brown; that is, no person of that description. The point was that no man of that name and description lived there. The question of his means was held by the court to be immaterial. The only practicable way in practice to prove that no deed appears of record is to show that an examination of the records discloses none. The court and jury cannot look through the records for themselves. The evidence of the witness might not be entitled to so much weight as if he had made special search with reference to testifying; but his general statement, founded not only upon his familiarity with the records, but upon his knowledge of the people and of the land of the town, might properly be received. The authorities cited to show that facts which appear of record must be proved by the records, or by copies thereof, are not applicable to show that oral testimony is inadmissible to show that a particular fact does not appear of record.

The statement of Mrs. Kennedy, alias Brown, to Mrs. Foye, that " Tom will fix him," (referring to one Eldridge, a man hired by Foye,) was properly excluded. We see no ground on which it was material or important, it having been said in the absence of the person referred to. It would have no tendency to contradict him, or affect his testimony.

The price that Porter was willing to accept for building the house on the Reed lot was properly excluded; or, if material in any aspect of the case, it could only be with reference to counts upon which no conviction was had. In the third and fifth counts, there was no charge which would make it material. At the time of the conspiracies therein charged, the title was in Brown. A proposed building contract between Meserve and

Porter, and Porter's uncompleted negotiation for building, do not in any way tend to negative the charges of subsequent conspiracies, as set forth in the third and fifth counts.

It was immaterial to show that Kennedy, alias Brown, wrote letters while in the state prison to a person called Flora Brown. She was not herself called as a witness. No evidence was offered to show that there was any relationship between them, and the fact of his writing letters to a woman called Flora Brown would of itself have no tendency to show that his true name was Brown.

The other exceptions taken at the trial in respect to the admission or exclusion of evidence are not now insisted on.

The ground of exception which appears to be most strongly relied on is, that the judge instructed the jury, in substance, that where an indictment charges a conspiracy to obtain goods by various different false pretences, it will not be a variance if it is proved that there was a conspiracy to obtain the goods by any one of the false pretences which are set out. This instruction was given in reference to the first count; but assuming that it was also applicable to the third and fifth counts, on which alone a conviction was had, we are of opinion that it furnishes no valid ground of exception.

It is conceded in the argument for the defendants, that, in an indictment for obtaining goods by false pretences, the government is not held to proof of all the pretences alleged. See cases cited in 2 Bish. Crim. Proc. §§ 165–171. But if there is no variance in such case, it certainly would savor of great refinement to hold that there is a variance when the indictment charges a conspiracy to obtain the goods by several false pretences, and only one is proved. The ground taken in argument is, that in the latter case the agreement between the conspirators is not proved as laid. But the means by which the cheating is to be accomplished are not necessarily to be held to be indivisible. The specification of them is required in our practice, in cases where the purpose itself of the alleged conspiracy is not criminal or unlawful, in order that it may appear that the means contemplated to carry it out are criminal or unlawful. According to the practice in England, as we gather from the course of the decisions, it is not necessary to set out the contemplated

means for effecting the cheat. *Rex* v. *Gill*, 2 B. & Ald. 204. *Regina* v. *Gompertz*, 9 Q. B. 824. *Sydserff* v. *Regina*, 11 Q. B. 245. *Latham* v. *Regina*, 5 B. & S. 635. But in order to give needed information to the court and to the defendant, where there is merely a general charge of a conspiracy to obtain goods by false pretences, a specification of particulars is ordered by the court, if moved for. *Regina* v. *Kenrick*, 5 Q. B. 49, 61. *Rex* v. *Hamilton*, 7 C. & P. 448. *Regina* v. *Brown*, 8 Cox C. C. 69. In Massachusetts, as in others of the United States, it is held that this information should be given in the indictment, in cases where the purpose of the conspiracy itself does not appear to be criminal or unlawful; and that this rule applies to conspiracies to cheat, as cheating is not necessarily criminal or unlawful. *Commonwealth* v. *Hunt*, 4 Met. 111. *Commonwealth* v. *Eastman*, 1 Cush. 189, 224–227. *Commonwealth* v. *Shedd*, 7 Cush. 514. *Commonwealth* v. *Wallace*, 16 Gray, 221. In the case last cited, the reason given is that it enables the court to see the character of the acts proposed to be done in the accomplishment of the purpose of the intended conspiracy, and also apprises the defendant of the facts relied upon to constitute the offence with which he is charged. No case is cited or has come to our notice where it has ever been held that it is a variance if some of these contemplated means are not proved as alleged, provided any criminal or unlawful means which are alleged are proved. At *nisi prius*, in England, it was held that a charge of a conspiracy " to prevent the workmen of the said J. G. from continuing to work " was well supported by evidence of a conspiracy to prevent one workman. *Rex* v. *Bykerdike*, 1 Mood. & Rob. 179. So also, that a charge of a conspiracy by false pretences to extort money was supported by evidence of a conspiracy to extort money without reference to the false pretences. *Regina* v. *Yates*, 6 Cox C. C. 441. Also, that if an act is charged to have been done with several intents, proof of one is enough. *Rex* v. *Evans*, 3 Stark. N. P. C. 35. We think the substance of the issue is sufficiently proved by proving any one of the pretences laid, provided such pretence would be sufficient if it alone had been charged. The mentioning of the various false pretences is rather a matter of enumeration than of essential description, and those pretences not proved to have been contemplated may be rejected in the indictment.

There certainly was evidence tending to support the averment as to a part of the pretences set forth in the third and fifth counts, and that is enough.

The defendant Meserve further contends that the averment in the third count was of a pretended contract with the Shreve, Crump, and Low Company, which did not bind Brown. We do not so understand it. The averment means, a contract which it was pretended was between a man by the name of George Brown and the corporation, when the contract in fact was between Kennedy and the corporation.

It is also urged that there was a variance because the averment was of a conspiracy to obtain goods, whereas the proof, if anything, was of a conspiracy to obtain goods and labor. But this is no variance. *Veazie's case,* 7 Greenl. 131.

It is further contended that there was no evidence to connect Meserve with the fifth count. If there was evidence of a conspiracy to obtain certain goods by cheating some one, it would take but slight additional evidence to show that Bailey was the one intended. There was a good deal of evidence tending to show that it was the purpose of Meserve and Foye to obtain goods of that kind; and there was evidence tending to show that Meserve offered to settle Bailey's claim by submitting to a loss. This objection would be proper to be considered on a motion for a new trial, but on exceptions we cannot say that there was no evidence for the jury.

We now come to the criticisms made by the defendants upon the judge's charge to the jury.

The first criticism is not well founded. It is, that the court so framed its language that the jury must have been led to think that the inquiry for them was whether a pretence was in fact made that Kennedy was Brown, and not whether there was an agreement to make a false use of that name. But conspiracy may be proved by circumstantial evidence, and proof of what was actually done is evidence tending to show what was agreed to be done. The judge had already fully and clearly instructed the jury as to the proper effect of proof of acts done, and there is no reason to suppose that the jury were under any misapprehension. The defendant now contends that the jury should have been instructed, in substance, that if Kennedy had gone by the

name of Brown before, and had not assumed the name of Brown in this particular instance for fraudulent purposes, such assumption and representation would not be a false pretence. In reference to this, it is enough to say that no such instruction was asked for at the trial.

The same remark applies to other criticisms. No specific instructions were asked for, provided the case was to go to the jury. The judge's attention was not called to any particular defect or insufficiency or inaccuracy in his instructions to the jury, but at the close of the charge the defendants enumerated twenty different portions of the charge to which they excepted, embracing all the four counts which were submitted to the jury, but with no further specification of what they complained of, or wherein they wished for different rulings. Now, in such a case, if any fundamental error in principle is discovered, or anything by means of which it seems probable that injustice may have been done, the defendants should have the benefit of it. But under such circumstances it would hardly conduce to a due administration of justice to search out opportunities for making minute verbal criticisms of the language of the charge, or to look for omissions to say all that might properly have been said. It is incumbent on a defendant who takes his exceptions in this manner, without having made any specific requests for instructions, and without calling the attention of the court to the points relied on further than to allege a general exception to the specified portions of the charge, to make it plain that there has been some substantial error. But we find nothing of the kind in the case before us. Indeed, even after argument, some of the criticisms are difficult to be understood. We discover no exception to the charge as to the third count, which we think ought to be sustained.

In the fifth count, one of the false pretences set forth as contemplated in the alleged conspiracy was, that " Kennedy, so to be represented as George Brown as aforesaid, had recently theretofore sold seven thousand dollars' worth of real estate . . . in said State of New Hampshire, and had invested the proceeds thereof in property in said Boston." The judge instructed the jury that this was good if proved as charged. The ground of objection urged by the defendants is, that this was a representation or pretence as to Kennedy's means or ability to pay, which

must be in writing under the Pub. Sts. c. 203, § 59. The judge had already instructed the jury fully, in reference to the first count, that pretences that he was rich, that he owned real estate in New Hampshire, that this real estate was valuable, and that he was interested in the manufacture of bricks in New Hampshire, were of such a character that they must be in writing; but that a representation that he was shifting his property from New Hampshire to Massachusetts might have another aspect, and that it might be found to be equivalent to a representation that he was so engaged in such transactions that he had occasion for the goods which he sought to obtain. The instruction now objected to was in effect a brief repetition of what had been said before in reference to the various pretences set forth in the first count, and must have been understood as subject to the same qualifications which had already been fully explained. The pretence in question was not merely a pretence as to Brown's means or ability to pay, but it was a pretence which might well be considered to relate to the situation of the property, and his purposes in reference to it, so as to be relevant to the alleged conspiracy to cheat.

*Exceptions overruled.*

## MEMORANDUM.

ON the fourth day of June, 1891, the Honorable WILLIAM ALLEN died at his residence in Northampton, having held the office of an Associate Justice of this Court from the fifth day of September, 1881.