STATE *v.* LOUIS ALPERT.

January Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, AND HASELTON, JJ., AND
WATERMAN, SUP. J.

Opinion filed October 14, 1914.

*Criminal Law—Receiving Stolen Goods—Elements of Offence—
"Knowledge" — Belief — Evidence — Relevancy — Guilty
Knowledge—Best and Secondary Evidence—Waiver of Ob-
jections—Instructions—Sufficiency.*

Exceptions to the exclusion of evidence relating solely to those counts
of an information in respect of which respondent was acquitted
will not be considered on review.

In a prosecution for receiving stolen goods, where a witness for the
State who had twice been sent up for burglary, testified to a con-
versation with respondent after witness's release from his sec-
ond term, and shortly before he claimed he had sold the goods to
respondent, and that respondent then told witness that respondent
liked to do business with witness because he would not "squeal,"
because he did not "squeal" before, and witness testified that he
knew to what action respondent referred, witness was properly
allowed further to testify that respondent referred to 20 bales of
cloth stolen from a box car at Essex Junction and valued at $1,000,
as showing that respondent knew witness was a thief, and that

respondent was on such friendly terms with him that respondent expressed pleasure in doing business with him.

In a prosecution for receiving stolen goods, guilty knowledge need not be shown by direct evidence, but may be proved by circumstances sufficient to satisfy respondent that the goods were stolen.

In a prosecution for receiving stolen dress goods, umbrellas, and alarm clocks in August, 1912, where a State's witness testified that he and three others entered a freight car in September, 1912, and therefrom stole some boxes of dress goods, umbrellas, and alarm clocks, which they testified were sold to respondent and the money divided equally between the four thieves, and another of the thieves testified to the stealing of three boxes of dress goods and umbrellas by the persons named, and their sale to respondent, and a third thief testified that in September he and three others stole two crates, in one of which he saw some dark checkered dress goods, and some underskirts, but did not remember seeing any umbrellas, the jury would be warranted in finding that the testimony of the witnesses related to the same occasion, and so the State was properly allowed to elicit from the latter witness that he had money as the proceeds of that excursion.

In a prosecution for receiving stolen goods, evidence that the goods were sold to respondent for less than their value is admissible on the issue of guilty knowledge.

The fact that one instructed another to deliver a package to a third person to be sent with the latter's consignment is no evidence that the package was in fact so delivered, nor that it was so sent.

In a prosecution for receiving goods stolen from a freight car, where one of the thieves testified that he remained with the goods during the night, and the next morning rode on a truck that took the goods to a designated shed where they were unloaded, and that he could go to the place where the shed was, evidence of a sheriff that after the thief had testified he went with the sheriff to respondent's store and entered an alley-way beside it where there were sheds and places to hitch horses was admissible.

Where testimony addressed to the court to identify certain papers was held insufficient for that purpose, and for that reason the papers were excluded, it was not an abuse of the court's discretion to hear the testimony in the presence of the jury, where the court instructed them that it was not for their consideration.

Where testimony adduced by the State was stricken from the record at its request, "unless some reason is shown why it should not be,"

and no reference to the matter was thereafter made, any· exception previously taken to the admission of that testimony was waived.

The fact that the unwritten rule of a business corporation in another state forbids the taking of original papers from its files does not justify the admission in evidence of copies of original invoices in those files, as against the objection that the copies are secondary evidence, where it does not appear that any effort was made to procure the original invoices.

In a prosecution for receiving stolen goods, where respondent admitted that his firm subscribed. for a specified newspaper and was then shown a copy thereof and asked whether he had read an article therein as to the arrest of a man thought to be one of the thieves, and was shown a copy of another issue of the paper containing another item as to the arrest and was asked whether he had read that item, and he answered that he did not remember, and that he did not know anything about the arrest until the alleged thief had been actually incarcerated, that was insufficient to justify the admission in evidence of the newspaper items as bearing on whether respondent thereby learned of the arrest of the alleged thief.

Exceptions not briefed by the exceptor will not be considered on review.

Since P. S. 5763, providing a punishment for the offence of receiving stolen goods, neither creates nor defines that offence, we must look to the common law for the essential elements of the crime.

In a prosecution for receiving stolen goods, respondent's knowledge need not be derived from seeing the goods taken, for it is sufficient if the circumstances of the transaction are such as to induce respondent to believe that the goods have been stolen.

In a prosecution for receiving stolen goods, an instruction that whatever would create in the mind of a reasonable man a belief that the goods had been stolen would, in the absence of countervailing evidence, be sufficient to induce such belief on the part of respondent was erroneous, since the true test is whether the circumstances were such as to induce the requisite belief in respondent's mind, such as it was, regardless of any other standard.

INFORMATION for receiving stolen goods. Plea, not guilty. Trial by jury at a special term in January, 1913, Chittenden County, *Taylor,* J., presiding. Verdict, not guilty on the first, third and sixth counts, and guilty on the second, fourth, and
13

fifth counts, and judgment thereon. The respondent excepted. The opinion states the case.

*Theodore E. Hopkins*, State's Attorney, and *Henry B. Shaw* for the State.

*V. A. Bullard* and *Guy M. Page* for the respondent.

WATSON, J. The information contains six counts charging the respondent with receiving goods in August and September, 1912, with knowledge that they had been stolen. The first count charges the receiving of a box of clothes; the second, three boxes of dress goods and umbrellas; the third, twenty boxes of Empire rubbers; the fourth, thirty boxes of Hood's rubbers; the fifth, certain perfumery; the sixth, a box of alarm clocks. The respondent was acquitted on the first, third and sixth counts, and convicted on the second, fourth, and fifth counts. The exceptions will be considered under the numbers given in the bill of exceptions.

I and II. These exceptions were taken to the admission of evidence relating solely to matters charged in the first count on which the respondent was acquitted. This being so, whether the evidence was properly admitted or otherwise is now immaterial. *Commonwealth* v. *Meserve*, 154 Mass. 64, 27 N. E. 997; *Commonwealth* v. *Billings*, 167 Mass. 283, 45 N. E. 910.

III. The State called as a witness one Poirrier who testified to a conversation with the respondent after the witness returned from serving a sentence of imprisonment for burglary, shortly before the witness claimed the goods in question were sold to the respondent. The witness testified that respondent told him on that occasion that he, respondent, liked to do business with him (witness) because he would not squeal, because he did not squeal before. Witness further testified that he knew to what action respondent referred by that remark. The witness was then asked the question, "What was the matter to which he referred by that remark?" The question was objected to as incompetent and immaterial. The witness answered: "To twenty bales of woolen cloth taken from the American Woolen Mill Company from a box car at Essex Junction, valued at $1,000." The State's evidence tended to show that at the time of the conversation referred to, the respondent was ac-

quainted with the witness and knew that he had served two terms of imprisonment for the crime of burglary, one for the term of eighteen months and one for the term of two and one-half years, and that he was recently out of prison and back home. There was no error in the ruling. The occasion to which the respondent had reference, being shown, the evidence tended to show not only that the respondent then knew that the witness for a long time had been, and was, a thief, but also that they were on such friendly terms that the respondent expressed his pleasure in doing business with the witness because he "didn't squeal before," meaning a time when the witness was convicted of stealing goods from a freight car. This evidence had a bearing on the question of the respondent's guilty knowledge on the occasions later when he purchased goods as charged in the information, with which he knew the witness to be connected. It is not necessary that guilty knowledge be shown by direct evidence. It may be shown by the circumstances, if they were such as to satisfy the receiver's mind that the goods were stolen, as if he purchased them "at suspicious and unreasonable times, or from persons who in the ordinary course of things could not fairly be considered as the unsuspected owners of property of the particular description, or had secreted or endeavored to secrete it, or attempted to explain the manner of acquisition by falsehood or prevarication." Will's Cir. Ev. 95.

IV. It is sufficient to say concerning this exception, that the question asked was not within cross-examination, and could be excluded in the discretion of the court.

V. Witness Howe had testified to one occasion when one Hooper, Poirrier, Fargo, and himself entered a freight car in September, 1912, and stole some boxes of dress goods, umbrellas, and alarm clocks, which they testified were sold to the respondent for forty dollars, the money received being divided equally among the four thieves. Poirrier testified to the stealing of three boxes of dress goods and umbrellas by the persons named and the sale of them to respondent. Fargo testified that in September he, Hooper, Howe, and Poirrier stole two crates, in one of which he saw some dark checkered dress goods, some underskirts, and dark coats, in another he saw baking powder, and "guessed that there was tobacco and cigarettes in it too"; but did not remember seeing any umbrellas. He was asked by the State's attorney, whether he received any money as the proceeds

of that excursion, and subject to objection as immaterial, and that it did not appear that any of the things testified to were articles received by the respondent, answered in the affirmative. The jury might well find that the evidence of these witnesses related to one and the same occasion. This being so it cannot be said that the sum received was immaterial. Evidence that the goods mentioned in the information were sold to the respondent under value bears upon the question of guilty knowledge. Will's Cir. Ev. 72.

VI. One Max Glasston, a witness called by the State, testified that he ordered from H. B. Claflin & Company and from S. Stanchfield & Company, goods of the general description of part of those covered by the second count. For the purpose of connecting the respondent with the Stanchfield order, witness was asked in direct examination whether he instructed Stanchfield to turn the package over to Claflin & Company, to be sent in the box with their consignment. Objection was made on the ground that it was immaterial and did not tend to show that the goods were put into the box. The question was permitted, and the witness answered in the affirmative. The witness being shown one of a number of sateen skirts which Poirrier testified were stolen from a freight car of the Rutland Railroad and sold with goods consigned to Max Glasston, to the respondent at his store, 19 Church Street, and which were found by the officers at that place, testified that he ordered from Stanchfield & Company three dozen sateen skirts, and that the article shown him was a sateen skirt; that he never received any of those skirts, nor any of the goods ordered from Claflin & Company, except two bales of cotton batting. The freight-checking clerk of the Rutland Railroad at Burlington testified that he checked out only two bales of cotton batting, and that two cases of dry goods were missing, according to the paper purporting to be a waybill not further identified. There was no evidence as to the Stanchfield shipment. This exception must be sustained. The fact that the witness instructed Stanchfield & Company to turn the package over to Claflin & Company to be sent in the box with that company's consignment, was not evidence that in fact the package was so turned over, nor that it was so sent.

VII. Against the objection of respondent, the State was allowed to put in evidence by one Moody, the freight agent of the Rutland Railroad at Burlington, an experiment with two

car seals taken from the car January 29, 1913, by the witness. The court found that the conditions of the experiment were substantially the same as the conditions of the seals in question, it having been shown that the seals were of the same kind of lead and wire as were used in September, that they were impressed with the Rutland seal number 226; that the seal leads had been pulled off the wires with a stick by witness as an experiment. The seal and wires were given to the jury to determine whether the wires could be put back and made to appear intact by a blank press. The ground of the objection was that there was no evidence that the conditions were substantially the same. An examination of the transcript (which is made controlling) shows evidence amply supporting the finding in this respect, hence the exception is without avail.

VIII. The witness McGowan testified to being with Howe when a car was broken into and boxes taken out and put in the bushes; that they had been drinking; that the witness remained all night in the bushes where the boxes were carried, and early the next morning Howe, Fargo, and Vradenburgh were there with a team and were loading the boxes onto the truck when the witness woke up or came to; that the witness saw them load the boxes, and he rode on the truck to the shed mentioned below and saw them unload the boxes there. McGowan testified that he could go to the place of these sheds, that they were on the right hand side of Church Street, going up, that the store was facing on the street and the sheds were right back of the store. The State was allowed to show by one Murphy, a deputy sheriff, subject to respondent's objection as immaterial and incompetent, that after McGowan left the witness stand he went with the witness up Church Street to the respondent's store on the left hand side of the street and entered the alley-way beside it where there are sheds and places to hitch horses. In view of McGowan's testimony, this testimony given by Murphy was both material and competent. In this connection it should be stated that Mc-Gowan, on being called to the witness stand later, testified that the place on Church Street where he thus went with the deputy sheriff was the shed where the boxes were left back of the Globe Department Store, and that the number over the door to the store was 19.

IX and X. These exceptions were taken to the introduction of evidence addressed to the court on a preliminary question

of identifying a shipping ticket (Exhibit 8), and a bill of lading. (Exhibit 9), which the State intended to introduce as corroborating evidence. Respondent objected on the ground that the evidence was incompetent, immaterial, hearsay, not the best evidence, and had no tendency to prove any issue in the case. The court held that the identification in each instance was not made out, and consequently the papers were not offered. The preliminary evidence was received in the presence and hearing of the jury in the regular course of the trial, and at the time it was received there was nothing to indicate that it was not for consideration by the jury. Thereafter in its charge, the court told the jury with reference to the matters covered by these two exceptions and by exception XI, that it should repeat what it had already said in their hearing as to certain testimony which was addressed to the court, and was not for their consideration; that this testimony was received to identify certain papers; that they were not identified sufficiently to be received as evidence, and so the testimony with reference to them which was addressed to the court, "goes out of the case and is not for your consideration." The evidence to the admission of which objection was made being on a preliminary question exclusively for the court, it was discretionary with the court to hear it in the presence of the jury, and the character of the evidence was such that abuse of discretion can not well be claimed. Moreover, the issue on which the evidence was received being decided in favor of the respondent, no harm resulted to him, and it is unnecessary to consider any specific ruling connected therewith.

XI. The State's witness Moody, before mentioned as the freight agent of the Rutland Railroad at Burlington, testified to checking in Burlington, the Claflin-Glasston shipment from a paper purporting to be a waybill, but not identified otherwise, and to finding a shortage. Respondent withdrew objection upon the assurance that the paper would be identified later. This was not done. Thereafter one Robinson, a claim investigator for the Rutland Railroad, was called by the State as a witness and was allowed to testify, in the presence of the jury in the regular course of the trial, as to the meaning of certain notations on this paper, that certain of them indicated the route, certain others indicated a shortage in the shipment when it was unloaded at Burlington, others indicated a shortage of two cases of dry goods addressed to Max Glasston, etc. There

was no other evidence identifying the waybill. The waybill was then offered by the State in connection with the testimony of Robinson and the testimony of the witness Moody, as proof of the loading of the shipment, the route taken by it, the part of it that arrived in Burlington, and the part that did not. The waybill was received subject to the objection that neither it nor the signature or writing on it had been properly identified. On the following day the State's attorney stated to the court that the State claimed nothing from the testimony of Robinson and moved to have it all stricken from the record, and also moved to have the admission of the waybill restricted so as to have it admitted only in connection with, and as corroborative of, the testimony of the witness Moody. Thereupon respondent's attorney said, ''I want to look over his testimony, we will have it done by noon.'' The court then said, ''It may be understood unless some reason is shown why it should not be, that Robinson's testimony is stricken out, and the ruling admitting No. 7 (the waybill) is restricted to be used in connection with Moody's testimony, so that counsel may understand the situation unless you call our attention to some reason why it should be modified.'' No claim is made in respondent's brief that this matter was again called to the attention of the court. This was tantamount to a consent by respondent's counsel to the ruling made, and a waiver of any exception previously taken in connection with the admission of the testimony so stricken from the record. *Weber Wagon Co.* v. *Kehl,* 139 Ill. 644, 29 N. E. 714.

XII. One Stetson, a witness produced by the State, testified that he was an employee of the Hood Rubber Company of Watertown, Massachusetts, that on September 28, 1912, he had loaded into car N. Y. C. No. 61259, some 181 cases of rubbers consigned to numerous consignees at western points. One William Shakespear, a witness called by the State, testified that he was the conductor of a freight train containing N. Y. C. car No. 61259, which during the night of October 5, 1912, stopped for about an hour in the Burlington yard. There was no evidence as to the condition of the car or the shipment after this time. The State called as a witness Edward C. Webster, traffic manager of the Hood Rubber Company, and having ''general supervision of all movements of traffic'' for them. He identified various papers as copies made under his personal supervision, and known by him to be correct copies of certain papers

in the files of that company, then in its office at East Water-
town, Massachusetts, and stated that an unwritten rule of the
company forbade the taking of original papers from the files.
The papers were in the form of invoices for shipments, showing
the name and address of each consignee, the style of rubbers,
case number, etc. The witness testified that the original in-
voices of this concern were made from a blotter by certain
clerks whose duty it was in the regular course of business to
copy the invoice from the blotter, which was made up from the
shipping tickets by clerks whose duty it was in the regular
course of business to copy the shipping tickets onto the blotter,
and other clerks, in the performance of their duties in the
regular course of business, made out the shipping tickets, and
that all these clerks, at the time the witness was testifying, were
in East Watertown, Massachusetts. The clerks making the in-
voice on the blotter have no knowledge of the correctness of
the items entered by them. There was no evidence as to the
making of the original invoices in this case except that they
were in the regular course of business. Against the objection
of the respondent that the papers were immaterial and incompe-
tent and hearsay, and that there was no evidence as to the cor-
rectness of the originals, the State was allowed to introduce
these copies in evidence, and from them the witness identified
goods taken in the original shipping boxes at the Sam Alpert
store, as exactly similar to those shipped on car N. Y. C. No.
61259, which goods the witness Poirrier identified as the goods
stolen by him from a box car of the Rutland Railroad and sold
by him to the respondent. A ruling on the question here pre-
sented does not involve the admissibility of an entry made by
one person in the regular course of business, recording reports
made to him by other persons in the regular course of business,
of a transaction lying in the personal knowledge of the latter,
where the practical inconvenience of producing as witnesses
the numerous persons thus concerned would outweigh the prob-
able utility of doing so. It involves the use of copies of invoices
in the files of a company doing business in another state, and
in its office there, upon the mere evidence "that an unwritten
rule of the company forbade the taking of original papers
from the files." The original invoices are not documents of a
public nature, the production of which is dispensed with on
account of the resulting inconvenience from the frequent re-

moval of public documents. They are documents of a private nature, not falling within that rule. Respecting such documents, "a copy is not evidence unless the original is lost, destroyed, or in the hands of a third person who cannot be compelled to produce it." *Clement* v. *Graham,* 78 Vt. 290, 63 Atl. 146. Ann. Cas. 1913 E. 1208. The determination of the questions here is governed by the rule laid down in the case of *Osborne* v. *Grand Trunk Ry. Co.,* 87 Vt. 104, 88 Atl. 512. There a record kept by a hospital in Canada was offered in evidence, and on its exclusion the question was before this Court. Under the system obtaining in the hospital the senior nurse in charge of a patient was required to keep and did in that instance keep a hospital record for the purpose of showing the attending physician any symptoms arising in the patient's condition in the absence of the doctor, the temperature, pulse, respirations, medicine administered, diet, and other details. One of the day nurses of the particular patient a part of the time was present at the trial and testified to keeping such a record when she was in charge, but it appeared that other nurses, especially night nurses, made entries on the record offered, as to the accuracy of which entries no evidence was introduced. The "other nurses" were not present at the trial, and it was not shown who or where they were, nor why they were not present as witnesses. It was held that the rule of evidence governing the admission of regular entries upon the principle of necessity required that the person who made the entries "must be available as a witness." The court quoting with approval from an opinion by Chief Justice Shaw, "that the ground is the impossibility of obtaining the testimony; and the cause of such impossibility seems immaterial." Applying this rule to the case at bar it is not enough that the traffic manager testified that the company had an unwritten rule forbidding the taking of original papers from the files. At most this is only a rule of business, which may or may not be applied by the concern in the circumstances of the particular case, and it is not unlikely that its action in this respect might be influenced by its interest in the goods alleged to have been received by the respondent. So far as appears, no effort was made by the State to have the original invoices brought here by some one having knowledge respecting them and the shipping of the goods to which they relate. The admission of the copies without proof of the impossibility of obtaining the original

documents, was error.   See *Chaffee* v. *United States*, 18 Wall. 516, 21 L. ed. 908.

XIII.  The respondent, being cross-examined by the State, testified that he did not subscribe for the Burlington Free Press at his home, but that it was taken at his store—Alpert & Rosenberg's store at Winooski.  He was shown a copy of that paper for November 30, 1912, and asked if he had read a certain article therein relating to the arrest of a man thought to be Poirrier, at Syracuse, N. Y., also a copy of that paper for December 2, containing another item as to the arrest, and was asked if he read that item, which questions he respectively answered: "I do not think I ever did, I do not remember it," and "I would not swear as to that, I would not swear whether it came to my attention or not."  He was then asked, if he usually read the papers, and answered, "Sometimes I do, not always." He further testified that he "did not to his knowledge know anything about Poirrier's arrest until he was actually here in Burlington jail" after December 2, that he "had no recollection of it."  Thereafter in the State's rebuttal, against respondent's objections, the items referred to were admitted in evidence and read to the jury, the court explaining that the items were not in any way to prove the facts stated therein, but as bearing upon the question whether the respondent through these articles became aware of the fact that Poirrier was arrested, as bearing upon his conduct.  This exception must be sustained,  The testimony of the respondent on which the two items were allowed to be read, was of too little, if. any, force to be submitted to the jury as a basis of any finding of fact.

XIV and XV.  These exceptions were taken to some things said by counsel for the State in arguing the case to the jury, but as the same things are not likely to be said on another trial of the case, the exceptions are not considered.

XVI and XVII.  These exceptions are not briefed by respondent.

XVIII, XIX and XX.  On the question of guilty knowledge, the court instructed the jury, in part, "If he (respondent) entertained a belief that the goods were stolen, in the absence of actual knowledge of the fact, then that would make it guilty knowledge within the meaning of the law."  "Guilty knowledge may be shown by proof of attending facts and circumstances from which by the common experience and understanding of

men it may be inferred. In other words the inference of guilty knowledge arises from the circumstances. You are justified in presuming that the respondent acted rationally, and that whatever would convey knowledge or induce belief in the mind of a reasonable man that the goods in question were stolen, would in the absence of countervailing evidence, be sufficient to apprise the respondent of the fact, or induce in his mind the belief that the goods in question were stolen." The court then submitted the question of guilty knowledge to the jury on all the circumstances surrounding each particular transaction; and in so doing the court told the jury to consider what acquaintance the respondent had with these parties. "Did he know of them in a way to put a cautious man—a reasonable man—upon his guard as to their dealings?"

The respondent excepted to what the court said with reference to "belief," and especially to what it said regarding circumstances that would "induce belief in the mind of a reasonable man" being sufficient to induce in the respondent's mind the belief that the goods were stolen; also to what the court said about putting a reasonable man on his guard.

Under the exception respecting "belief," it is said that the word "knowing" in the statute (P. S. 5763) has a different meaning from "belief." Yet that statute neither creates nor defines the offence. It specifies the punishment for the offence as it exists at common law, and to that law we must look for the essential elements of the crime. *State* v. *Bannister,* 79 Vt. 524, 65 Atl. 586. The knowledge that the goods were stolen need not be such as a person acquires by seeing them taken; it is sufficient if the circumstances accompanying the transaction were such as to make the respondent believe them to have been stolen. *Regina* v. *White,* 1 Fost. & F. 665. In *Com.* v. *Gazzolo,* 123 Mass. 220, 25 Am. Rep. 79, the court said the issue whether the defendant received the goods, knowing they had been stolen, involved an inquiry into the state of his mind, or his belief. In *Com.* v. *Leonard,* 140 Mass. 473, 54 Am. Rep. 485, 4 N. E. 96, it was held that if the property had actually been stolen, a belief by the defendant that it had been stolen was tantamount to knowledge. In *State* v. *Gordon,* 105 Minn. 217, 117 N. W. 483, 15 Ann. Cas. 897, it was held that direct proof of guilty knowledge was unnecessary; that the circumstances accompanying a transaction may justify the inference that the respondent

believed, and had received the goods on the belief, that they had been stolen.

The other exception to the charge presents a more serious question. The court there said in effect that if the circumstances were such as to create a belief in the mind of a reasonable man that the goods in question had been stolen, they would be sufficient, in the absence of countervailing evidence, to induce such belief on the part of the respondent. The instruction thus given was strictly in accordance with the law as stated in *Huggins* v. *People,* 135 Ill. 243, 25 N. E. 1002, 25 Am. St. Rep. 357, and to say the least it is as favorable to the person charged as are the holdings of courts of last resort in several of the other states. Yet the effect of such an instruction is to make guilty knowledge of a respondent depend upon what the jury find would induce "belief" in the mind of a "reasonable man," rather than upon what they find induced "belief" in his own mind. One essential element of the offence is, that the person, at the time he received the stolen goods, had knowledge that they had been stolen. If he did not have actual or positive knowledge, the question is whether from the circumstances *he*—not some other person—believed they had been stolen. The circumstances must have that effect upon his mind, to constitute knowledge by him. The question must be determined upon the individual test of the accused. The instruction given fell short of this and in our opinion, is at variance with the true doctrine. This holding is supported by *Cohn* v. *People,* 197 Ill. 482, 64 N. E. 306; *State* v. *Rountree,* 80 S. C. 387, 61 S. E. 1072, 22 L. R. A. (N. S.) 833; *Robinson* v. *State,* 84 Ind. 452; *State* v. *Denny,* (N. D.) 117 N. W. 869.

XXIII. The respondent moved to set aside the verdict because, the value of the property received by the respondent was not shown by the evidence, nor found by the jury.

Since the case is to be remanded for a new trial because of the erroneous rulings in other respects, this question is not considered. Very likely evidence as to the value will be introduced at the next trial.

*Judgment and sentence reversed, and cause remanded for a new trial.*