## State of Vermont v. Harold C. Guppy, Jr.

[285 A.2d 717]

No. 131-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 7, 1971

*M. Jerome Diamond,* State's Attorney, for the State.

*Timothy J. O'Connor, Jr.,* Brattleboro, for Defendant.

**Smith, J.** The respondent, Harold C. Guppy, Jr., was charged with receiving stolen property in violation of 13 V.S.A. § 2561, having a value in excess of $100.00. A jury trial was held on August 11 and 12, 1970, in Vermont District Court, Unit No. 6, Windham Circuit, and a verdict of guilty was rendered. The respondent has taken a timely appeal to this Court claiming error on the part of the trial court in failing to grant the respondent's motion for a directed verdict of acquittal, based upon three grounds :

 A. State failed to prove that the respondent received the stolen goods.
 B. The State failed to prove that the respondent had guilty knowledge that the goods had been stolen.
 C. The State failed to prove that the respondent intended to deprive the owner of the possession of said goods.

Taken in the light most favorable to the State, the prevailing party in the action, the following factual situation was presented to the jury.

The respondent lived in Jacksonville, Vermont, in a rented dwelling with an attached garage. He rented a room in the house and a section of the garage to one Herbert Plimpton. Plimpton, who was the principal witness for the State and who was granted immunity from prosecution, testified that he was the one who actually committed the breaking and entering which resulted in the actual taking of the goods in question, and he further testified that he was not accompanied by the respondent during the commission of the crimes.

Many of the goods that Plimpton admitted stealing were stored in that area of the garage which he rented from the respondent. However, this space proved inadequate to store the fruits of the crimes and Plimpton also placed stolen goods in an entry room which he did not rent from the respondent. He told the respondent to take and use anything he wished from the stored stolen goods. The respondent did, in fact, take and use some of the stolen goods, including a sewing machine, two pairs of skiis and ski boots, and an electric clock radio.

594

■■ In passing upon a motion for a directed verdict of not guilty, the trial court must take the evidence in the light most favorable to the State and the effect of modifying evidence is to be excluded. The test is whether the State introduced evidence fairly and reasonably tending to show the respondent's guilt or whether the jury, on the evidence, was justified in finding the respondent guilty beyond a reasonable doubt. Suspicion, however strong, is not evidence, and a directed verdict of acquittal should be granted on motion by a respondent when the evidence raises only a suspicion of guilt or leaves it uncertain or dependent upon conjecture. *State of Vermont* v. *Ballou,* 127 Vt. 1, 3, 238 A. 658 (1968).

The statute, by virtue of which the respondent was charged with the possession of stolen goods, is 13 V.S.A. § 2561. This statute merely provides that a person who buys, receives or aids in the concealment of stolen property, knowing the same to be stolen, shall be punished the same as for the stealing of such property. This Court held that since this section neither creates nor defines the offense, the common law must be examined for the essential elements of the crime. *State* v. *Alpert,* 88 Vt. 191, 203, 92 A. 32 (1914). The Court also held, in *Alpert,* that in a prosecution for receiving stolen goods, guilty knowledge need not be shown by direct evidence, but may be proved by circumstances sufficient to satisfy the respondent that the goods were stolen. It is not necessary that the respondent's knowledge the goods were stolen be derived from seeing the goods taken, but it is sufficient if the circumstances of the transaction are such as to induce the respondent to believe that the goods were stolen. *State* v. *Alpert, supra.*

We shall consider together the respondent's claims set out in A and C, that the State failed to prove the respondent received the stolen goods, as well as the State also failed to prove the respondent intended to deprive the owner of the possession of the goods.

■ There is no doubt that the goods with which the respondent was charged with having received were found in his possession, on various parts of his premises. All other goods that had been stolen had been removed by Plimpton before the search of the premises of the respondent upon a "tip" that the place was to be searched. A sewing machine, stolen by Plimp-

ton and given to the respondent, was found placed in a cabinet other than that in which it had originally been encased. A clock radio, also stolen, was found in use in the house of the respondent. These, as well as other goods found on the premises of the respondent, had been taken by him at the invitation of Plimpton to take whatever he wanted from the stolen goods which had been stored, not only on the premises rented by Plimpton, but on the premises retained by the respondent for his own use as well. At the time they were found by the officers who conducted the search of the premises of the respondent, there can be no .doubt that the respondent had such control over them as to amount to constructive possession or control. This was sufficient under *State* v. *Ballou, supra,* 127 Vt. at 6, to show possession in the respondent.

 The respondent argues that there is no proof the respondent intended to deprive the owner of the possession of the stolen goods in his possession, and cites various Alabama cases in support of his contention, but the Alabama cases are founded on the code law of that State and are not applicable here. Under the common law, the obviously essential element of the crime of receiving stolen goods is knowledge that the goods were stolen and receiving them with an unlawful intent. *State* v. *Bannister,* 79 Vt. 524, 527, 65 A. 586 (1907). There is no common law element which requires specific proof to the effect that the respondent intended to deprive the owner of the possession of the stolen goods. However, even if the State were required to show that the respondent intended to deprive the owner of the possession of the stolen goods, which is not an essential of the common law crime, we think that consideration of the other points raised by the respondent will indicate that such intention existed.

Point B raised by the respondent, we believe, involves the most crucial issue presented to the court below in the motion for a directed verdict. It is the contention of the respondent that the State failed to prove the respondent had guilty knowledge the goods had been stolen.

The respondent concedes that the State does not have the burden to prove actual knowledge but it must prove facts and circumstances so as to cause a belief in the respondent that the goods were stolen, or that he ought to have known from

the circumstances they were stolen, and that such facts and circumstances must also satisfy the jury that the respondent did know and believe such goods were stolen. 76 C.J.S. *Receiving Stolen Goods* § 8, at 13, 14.

■ Our own law on the subject is in most respects as the respondent asserts. In *State* v. *Alpert, supra,* 88 Vt. at 194-95, the Court stated:

"It is not necessary that guilty knowledge be shown by direct evidence. It may be shown by the circumstances, if they were such as to satisfy the receiver's mind that the goods were stolen. . . ."

And on 88 Vt. at 203 in the same opinion, the Court said:

". . . the knowledge that the goods were stolen need not be such as a person acquires by seeing them taken; it is sufficient if the circumstances accompanying the transaction were such as to make the respondent believe them to be stolen. . . ."

We must now again direct our attention to the evidence presented below in order to determine the correctness of the lower court's refusal to grant the motion of the respondent for a verdict to be directed in his favor.

The witness, Plimpton, admitted theft of the goods found in the possession of the respondent, testified on the stand that he never told the respondent the goods stored in the garage and entry way had been stolen by him. However, the testimony of two police officers was that Plimpton had admitted to them that he had informed the respondent of the origin of the goods, much of which was received without objection.

Plimpton had a long and varied criminal record, including breaking and entering, assault and receiving stolen goods, and the respondent was aware of such record and had discussed with Plimpton in some detail some of the offenses. The vehicle used by Plimpton on some of his breaking and entering expeditions was bought by the respondent because of the lack of credit standing on the part of Plimpton, but the actual payments were made by Plimpton. After one of Plimpton's breaking and entering trips, he left a sewing machine, which he had stolen, in the hall of the respondent, and such machine was found in the possession of the respondent, although transferred

into a different style cabinet. Upon one occasion, the wife of the respondent inquired of him as to the source of all the goods which Plimpton was storing on the premises, and the respondent told her to shut up and mind her own business. Plimpton and respondent were on such good terms that, to use Plimpton's words "each served as alibi for the other." A map was found in the vehicle bought by the respondent, under the front seat, on which the locations of the various camps and houses broken into were plainly marked, although Plimpton testified that the map was his.

Without resorting to suspicion or conjecture, the jury could have fairly and reasonably found that the respondent knew of Plimpton's past criminal background, which, in itself must have led the respondent to conclude that the large amounts of goods brought to his premises by Plimpton were obtained by other than legal means. This was substantiated by the testimony of the police officers that Plimpton had actually informed the respondent of the unlawful taking of the goods.

The fact that the respondent bought the vehicle, which actually was paid for by Plimpton and used in the breaking and entering, as well as the fact that the respondent had aided Plimpton in disposing of illegally killed deer, was further proof of the complicity between the two men. The admonition by the respondent to his wife, when she inquired as to the origin of the large quantity of goods being brought to their premises by Plimpton, to keep her mouth shut and make it none of her business, adds to the proof of guilty knowledge on the part of the respondent. The taking and use of some of the stolen goods by the respondent, at the invitation of Plimpton, further adds to the conclusion which could be drawn by the jury that the respondent not only knew of the illegal taking of the goods, but he knowingly benefited from the spoils of the robberies.

Applying the standards laid down in *State* v. *Ballou, supra,* 127 Vt. at 3, the trial court was correct in denying the motion of the respondent for a directed verdict of not guilty.

*Judgment affirmed.*