COMMONWEALTH *vs.* STANLEY H. BORIS
(and two companion cases [1]).

Essex.   October 5, 1944. — December 1, 1944.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & SPALDING, JJ.

*Practice, Criminal,* Preliminary question, Trial without jury, Appeal with assignment of errors.  *Error,* Whether error shown.  *Receiving Stolen Goods.  Evidence,* Admissions and confessions, Of reputation.

A refusal by a trial judge to recognize a waiver of jury trial under G. L. (Ter. Ed.) c. 263, § 6, as amended by St. 1933, c. 246, § 1, by one of several defendants separately indicted for the same kind of offence by indictments not showing whether or not the offences charged grew out of the same single chain of circumstances or events, must stand where the record before this court did not show what was submitted for consideration by the judge at a hearing on the matter of the waiver.

Upon a review of a criminal case tried under G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended, evidence upon which an assignment of error is based must be made a part of the record.

---

[1] The two companion cases are Commonwealth *vs.* Hyman Marcus and Commonwealth *vs.* Paul R. Noiseux.

A finding of guilt of knowingly receiving stolen goods was warranted as to each of two defendants, one the proprietor of a bakery and the other the proprietor of a restaurant, by evidence of the circumstances in which he bought stolen rationed foods outside the ordinary course of purchasing, received delivery thereof at an unusual time or place and in an unusual manner, and paid for them a price not the market price without giving ration points to the seller.

A purchaser of stolen goods must personally know or believe that they were stolen in order to be convicted of receiving stolen goods in violation of G. L. (Ter. Ed.) c. 266, § 60; it is not enough that he bought the goods in circumstances which would have led a reasonably intelligent and prudent man to believe that they had been stolen.

At the trial of an indictment against a purchaser of stolen goods for receiving them in violation of G. L. (Ter. Ed.) c. 266, § 60, evidence, merely that the defendant was silent when a statement was made in his presence before his arrest that the one who had informed him that the goods were for sale knew that they had been stolen, did not show an implied admission by the defendant and should have been excluded.

Testimony that a defendant's reputation for honesty was good was properly struck out at a criminal trial where the witness was not shown to have been a member of the same community with the defendant in such a sense as to give him familiarity with the defendant's reputation, and admitted that he had never heard it discussed.

THREE INDICTMENTS, found and returned on January 14, 1944.

The cases were tried before *Cabot*, J.

In this court the cases were submitted on briefs.

*H. H. Toltz*, for the defendant Boris.

*E. F. Flynn* & *S. Abrams*, for the defendant Marcus.

*P. J. Durkin*, for the defendant Noiseux.

*H. A. Cregg*, District Attorney, *J. J. Ryan, Jr.*, & *E. F. Cregg*, Assistant District Attorneys, for the Commonwealth.

RONAN, J.　These defendants were convicted after a trial of three indictments, each one of which charged one of the defendants separately with receiving stolen property. These indictments were tried together with a similar indictment against one Talbert, who was acquitted. The trial was held in accordance with G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended. The defendants have assigned various errors.

The second error assigned by Marcus and the first error assigned by Noiseux are based upon the refusal of the

judge to recognize their waivers of a jury trial. The statute, G. L. (Ter. Ed.) c. 263, § 6, as amended by St. 1933, c. 246, § 1, provides in so far as material that a defendant in a criminal case other than a capital case may "waive his right to trial by jury by signing a written waiver thereof and filing the same with the clerk of the court, whereupon he shall be tried by the court instead of by a jury, but not, however, unless all the defendants, if there are two or more charged with offenses growing out of the same single chain of circumstances or events whether prosecuted under the same or different indictments or complaints shall have exercised such election before a jury has been impanelled to try any of the defendants."

The election of one charged with a crime to be tried by a judge without a jury could not be effectually exercised prior to the enactment of St. 1929, c. 185, § 1, which was the original form of what is now G. L. (Ter. Ed.) c. 263, § 6, as amended, conferring jurisdiction on the Superior Court to hear criminal cases where a defendant waives trial by jury. *Commonwealth* v. *Rowe*, 257 Mass. 172. *Commonwealth* v. *Millen*, 289 Mass. 441. *DeGolyer* v. *Commonwealth*, 314 Mass. 626. But as the original statute read, a defendant could not waive a jury trial unless all the defendants did so. The purpose of this provision was to avoid double trials. This provision was evidently considered as placing too great a limitation upon a defendant's right to be tried without a jury, and by virtue of the amendment, St. 1933, c. 246, § 1, he was not to be deprived of that right by the failure of other defendants to waive a jury trial unless the offences with which the defendants were charged arose out of "the same single chain of circumstances or events."

Marcus and Noiseux each contend that the crimes with which he was charged did not arise out of the same single chain of circumstances as the crimes with which the other three defendants were charged. They point to the indictments as charging separate and independent offences. But the indictments were sufficient in form, and there was no occasion to allege any connection between the crimes al-

leged in one indictment and those alleged in the other indictments. As far as the indictments themselves show, the offences which they charged may or may not have grown out of the same single chain of circumstances. The transcript of the evidence does not show what evidence, if any, was heard by the judge, but it does appear that the matter was fully discussed by the judge, the district attorney and counsel for these defendants. It may be, as far as we know, that the statements of counsel were considered as evidence. What these statements were is not disclosed by the record. The statement of the district attorney might well have been sufficient basis for the conclusion reached by the judge. These defendants consented to having the question decided in the manner in which it was presented to the judge. They had ample opportunity to present such evidence as they desired. The decision on the question raised by the waivers had to be decided before trial upon such evidence or statements in lieu of evidence as the parties submitted. The decision of the judge upon this preliminary question of fact is conclusive unless, upon the evidence or facts submitted to him, it is shown to be erroneous in law. In the absence of anything on this record showing what was submitted to the judge, his decision cannot be reversed. *Commonwealth* v. *Sturtivant,* 117 Mass. 122, 137. *Dexter* v. *Thayer,* 189 Mass. 114, 115. *Commonwealth* v. *Marshall,* 211 Mass. 86, 90. *Thornhill* v. *Carpenter-Morton Co.* 220 Mass. 593, 599. *Commonwealth* v. *Russ,* 232 Mass. 58, 59. *Coghlan* v. *White,* 236 Mass. 165, 168–169. *Cummings* v. *Moore,* 305 Mass. 105, 107. The burden is always upon the excepting party to set out in his bill of exceptions all the material evidence upon which the ruling of which he complains was based. *Commonwealth* v. *McIntosh,* 259 Mass. 388. *DeFilippo* v. *DiPietro,* 265 Mass. 186. *Morganti* v. *Casey,* 311 Mass. 46. Where, as here, a review is sought under G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended, the evidence upon which an assignment of error is based must be made a part of the record. See § 33D. *Commonwealth* v. *Robinson,* 295 Mass. 471. *Dolan* v. *Commonwealth,* 304 Mass. 325, 334.

The fifth error assigned by Marcus and the first error assigned by Boris are based upon the refusal of the judge to direct verdicts of not guilty. There was evidence that sugar was scarce, and to secure an ample supply was one of the chief worries of Boris, who conducted a bakery in Chelsea. Boris usually purchased goods, including sugar, from Garland & Newton, Inc., through orders given to the salesman who called at his bakery and not, as in this instance, through unsolicited offers from a truck driver employed by this corporation who insisted upon payment and was paid at Boris's dwelling house for the sugar. This transaction was outside of the ordinary course of trade between Boris and Garland & Newton, Inc. Boris resided in Salem. The receipt of the sugar at his house, the payment of nearly twice its market price in cash without giving any ration points or certificate to the seller, the failure of Boris to bring the matter to the attention of the salesman of Garland & Newton, Inc., who visited him weekly, and his statement to the police that he suspected that the sugar had been stolen, although he testified that he meant that he did not entertain such a suspicion until he was interviewed by the police, presented an issue of fact as to whether, when he received the sugar, he knew that it had been stolen. The Commonwealth was not required to prove that he then knew the actual facts of the theft. It was undisputed that the sugar had been stolen and it was enough if the circumstances attending the receipt of the goods generated an actual belief in him that the property had been stolen. *Commonwealth* v. *Gazzolo*, 123 Mass. 220. *Commonwealth* v. *Leonard*, 140 Mass. 473. *Commonwealth* v. *Kronick*, 196 Mass. 286. *Commonwealth* v. *Peopcik*, 251 Mass. 369. *Commonwealth* v. *Parrotta*, 316 Mass. 307.

Marcus operated two restaurants. One Grace Bouchard, who was employed at the diner of the defendant Noiseux and had been previously employed by Marcus, telephoned Marcus on November 14, 1943, that two men were at the diner who had seven tubs of lard. Marcus agreed to buy them. She told these men, who could have been found to be Conant and Landry, to deliver three tubs to one res-

taurant and four to the other and then go to Marcus's office and receive their pay. Both delivered the lard as directed and Conant was paid by a check of Marcus. Conant and Landry had broken into the bakery of Irving shortly before and had stolen some crates of eggs and seven tubs of lard which they had stored in Noiseux's diner. Both of them again broke into this bakery, and on Sunday morning, November 28, 1943, Conant telephoned Marcus telling him he had some eggs and lard, that they were on his truck, that the lard was spoiling and he wanted to sell it and have his truck free for use early the next morning. Marcus made an appointment and met Conant and Landry at one of his restaurants. The goods were in the back of an automobile. Marcus inquired whether the goods had been stolen and was told that they had not. There was evidence that one of the lard containers was damaged and that some of the eggs had been broken in one of the crates. An inspection of the other crates showed that the eggs were not graded as to size. Marcus paid $13 a crate for two crates of eggs, $6.50 for the broken crate, and fifteen cents a pound for the lard. This was less than the market price. Lard was rationed and a purchaser was required to give the seller ration points. Marcus gave no points, although there was evidence that he offered to do so, but Conant did not want any ration points. There was also evidence that one of the crates of eggs had on it a railway express tag with a name on it when Marcus examined the goods at his restaurant and before he agreed upon the prices he would pay. The dealings of Marcus with Conant and Landry which were instigated by Bouchard were not in the regular course of business. It was unusual to make delivery of eggs and lard from a private automobile on a Sunday afternoon. The situation was such as to prompt Marcus to ask whether the goods had been stolen. These and the other circumstances already mentioned were sufficient to warrant an inference that Marcus at the time he bought the goods knew that they had been stolen. It is enough if the inference of guilty knowledge was reasonable and warranted by the evidence, and found by the jury to be established beyond reasonable

doubt.   *Commonwealth* v. *Doherty*, 137 Mass. 245.   *Commonwealth* v. *Asherowski*, 196 Mass. 342.   *Commonwealth* v. *Desatnick*, 262 Mass. 408.   *Commonwealth* v. *Williams*, 312 Mass. 553.

All the defendants based an assignment of error on that portion of the instructions to the effect that it was not necessary for the Commonwealth to prove that the defendants knew that the property had been stolen, that it was enough if the Commonwealth proved that a person of reasonable intelligence and caution would have believed that the property had been stolen, and that, if the circumstances were such that a reasonably cautious and prudent man would have been satisfied that it had been stolen and would have refused to buy it, or would have made further inquiry, then the defendants must be found guilty.

The defendants were indicted for a violation of G. L. (Ter. Ed.) c. 266, § 60, which provides a penalty for anyone who "buys, receives or aids in the concealment of stolen or embezzled property, knowing it to have been stolen or embezzled." The infraction of this statute is not proved by negligence nor by failure to exercise as much intelligence as the ordinarily prudent man. The statute does not punish one too dull to realize that the goods which he bought honestly and in good faith had been stolen. Guilty knowledge upon the part of a defendant that the property had been stolen is a prerequisite of a violation of the statute. A man's intention or knowledge is a matter of fact which ordinarily cannot be proved by direct evidence and resort frequently must be had to proof by inference. It is in this respect that the attending circumstances known to a defendant are important as tending to show that he possessed knowledge that the goods had been stolen, or at least as inducing a belief that they had been stolen; but whatever the circumstances were, if the defendant did not in fact know or believe that the property had been stolen, he cannot be found guilty. The knowledge or belief of the defendant must be personal to him and our statute furnishes no substitute or equivalent. The instruction in the present case was based upon a statement in *Kemp* v. *Hammond*

*Hotels,* 226 Mass. 409, 416, where, after deciding that notice of such circumstances as would lead a reasonable man to discover that gambling was being conducted upon his premises was equivalent to actual knowledge of such gambling, it was said that "It [knowledge] has been so defined in prosecutions under R. L. c. 208, § 53, for receiving stolen goods knowing them to have been stolen. *Commonwealth* v. *Finn,* 108 Mass. 466. *Commonwealth* v. *Leonard,* 140 Mass. 473, 478, 479." That statement finds no support in either of the cases cited. The first case does not hold that one may be convicted for receiving stolen goods, knowing them to have been stolen, merely because he ought to have known that they had been stolen, but impliedly recognizes that guilty knowledge or belief is essential to a conviction, and properly permits a jury to infer the existence of such knowledge or belief where the circumstances attending the receipt of the goods were such as to satisfy a reasonable man that they had been stolen. The case cannot be construed to hold that guilty knowledge or belief upon the part of the defendant is not necessary, but on the contrary, recognizing this necessity, it simply points out a method by which guilty knowledge may be proved. The second case cited expressly holds that a defendant cannot be convicted unless at the time he received the stolen goods he knew or believed that they had been stolen. And the rule as set forth in this case, so far as we are aware, has always been followed in this Commonwealth. See, for instance, *Commonwealth* v. *Maguire,* 108 Mass. 469, 471; *Commonwealth* v. *Gazzolo,* 123 Mass. 220; *Commonwealth* v. *White,* 123 Mass. 430, 435; *Commonwealth* v. *Billings,* 167 Mass. 283, 285; *Commonwealth* v. *Phelps,* 192 Mass. 591; *Commonwealth* v. *Kronick,* 196 Mass. 286; *Commonwealth* v. *Peopcik,* 251 Mass. 369, 371; *Commonwealth* v. *Grossman,* 261 Mass. 68, 71. These decisions are in accord with the great weight of authority. *Stemple* v. *United States,* 287 Fed. 132. *State* v. *Newman,* 127 Conn. 398. *State* v. *Alpert,* 88 Vt. 191. *Meath* v. *State,* 174 Wis. 80. *State* v. *Lewis,* 117 W. Va. 670. See cases collected in 147 Am. L. R. 1052. The instruction that, if the defendants ought to have known

that the goods had been stolen, they must be found guilty, was contrary to our decisions and was erroneous.

The third and sixth errors assigned by Marcus are based upon rulings on evidence, and as both questions are likely to arise at the next trial they should now be considered.

Marcus, before his arrest, was interviewed by a police officer with reference to his dealings with Conant. Conant appeared during the interview, and stated that Bouchard knew the goods, which Marcus later received, had been stolen because she (Bouchard) heard Conant tell the day man at the diner, where the goods were stored and where Bouchard was employed, the place from which he got these goods. It appeared that Marcus did not reply to this statement of Conant. Marcus excepted to this part of the interview, together with the fact that he made no reply thereto, being introduced in evidence at the trial. A man is not bound to answer or explain every statement made by anyone in his presence if he wishes to prevent his silence from being construed as an admission of the truth of the matters contained in the statement, even though the statement contains something adversely affecting his rights. *Larry* v. *Sherburne*, 2 Allen, 34. *Gray* v. *Boston Elevated Railway*, 215 Mass. 143. Evidence of one's silence, offered as showing an implied admission on his part of facts included in an oral statement made in his presence, is to be received and applied with caution. The competency of such evidence is subject to well settled limitations. Whether the failure to reply may properly be regarded as a tacit admission of the matters stated depends upon whether the person to whom the statement is directed heard and understood it and "whether the truth of the facts embraced in the statement is within his own knowledge, or not; whether he is in such a situation that he is at liberty to make any reply; and whether the statement is made under such circumstances, and by such persons, as naturally to call for a reply, if he did not intend to admit it." *Commonwealth* v. *Kenney*, 12 Met. 235, 237. *Commonwealth* v. *Brown*, 121 Mass. 69, 80. *Commonwealth* v. *Simpson*, 300 Mass. 45, 51. *Commonwealth* v. *Cheng*, 310 Mass. 293, 297. *Common-*

*wealth* v. *Hoff*, 315 Mass. 551, 552. Marcus was not at the diner when the remark of Conant was alleged to have been made; and if, through the remark, Bouchard learned that the goods had been stolen, there is nothing in this record to show that such knowledge was communicated to Marcus before he purchased the goods. Bouchard did not testify, and Marcus testified that he had no knowledge that the goods had been stolen. If Marcus was ignorant as to such knowledge on the part of Bouchard, he was in no position to admit or deny it and so he would not naturally be expected to deny the possession of such knowledge by her. Furthermore, the statement of Conant related entirely to the knowledge of Bouchard and it did not charge the defendant himself with such knowledge. The character of the statement was not such as would call for a denial or repudiation by Marcus. There was error in the admission of this evidence. *Commonwealth* v. *Kenney*, 12 Met. 235. *Commonwealth* v. *Harvey*, 1 Gray, 487. *Larry* v. *Sherburne*, 2 Allen, 34. *Commonwealth* v. *Densmore*, 12 Allen, 535. *Commonwealth* v. *Roberts*, 108 Mass. 296.

There was no error in striking out the evidence of Mann, who, after testifying that the reputation of Marcus for honesty was good, then admitted that he had never heard his reputation discussed. He was not qualified to testify to a fact of which he had no knowledge. *Commonwealth* v. *Lawler*, 12 Allen, 585. *Walker* v. *Moors*, 122 Mass. 501. *Commonwealth* v. *Rogers*, 136 Mass. 158. *Commonwealth* v. *Porter*, 237 Mass. 1. *Clark* v. *Eastern Massachusetts Street Railway*, 254 Mass. 441. We do not decide that the good reputation of a man may not be shown by the absence of discussion of his character in the particular community in which he lives. *Day* v. *Ross*, 154 Mass. 13. But though the witness lived in the same city with the defendant Marcus, he is not shown to have been a member of the same community with him in such a sense as to give him familiarity with his reputation.              *Judgments reversed.*