COMMONWEALTH *vs.* GEORGE SAZAMA.

Franklin.    April 6, 1959. — May 4, 1959.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Evidence*, Admissions and confessions. *Practice, Criminal*, Exceptions: whether error harmful. *Error*, Whether error harmful.

On the record of a criminal trial, error, if any, in the admission of evidence of statements made in the defendant's presence by another person during an interrogation and of an admonition then made by the defendant to the other person to "keep still" and to "wait till the lawyer gets here," error in the admission of evidence of other statements made by the other person at the interrogation and of a refusal by the defendant "on advice of counsel" to say anything respecting them, and error in the admission of evidence that the defendant referred a question asked him at the interrogation to his counsel was not prejudicial to the defendant in view of certain other evidence admitted without objection.

COMPLAINT, received and sworn to in the District Court of Franklin on January 8, 1957.

Upon appeal to the Superior Court, the case was tried before *Casey*, J., a District Court judge sitting under statutory authority.

*Manuel Katz,* (*Douglas E. O'Neil* with him,) for the defendant.

*Sanford Keedy,* District Attorney, & *Oscar Grife,* Assistant District Attorney, for the Commonwealth, submitted a brief.

CUTTER, J.  Sazama was convicted, under G. L. c. 271, § 7, in a separate trial, of being concerned on January 7, 1957, in the same operation of a pinball machine in a Greenfield tavern considered in *Commonwealth* v. *Butynski, ante,* 151.  His bill of exceptions raises certain of the same questions of the admission of evidence considered in the *Butynski* case, which on those questions is controlling.  We consider only the exceptions not thus concluded.  These exceptions are based upon the allegedly erroneous admission of certain evidence.

Butynski was manager of the tavern.  One Erdeski, a State police officer, went to the tavern on January 7.  There he saw Sazama remove from the pinball machine a box half full of nickels, take the box into a back room, return with it empty, replace it in the machine, and lock the machine.  Thereafter Erdeski played the machine and was paid off $3 for free games by Butynski, as described in the *Butynski* case.

On January 8, 1957, two officers talked to Sazama at the Millers Falls Veterans Club about 11:30 A.M.  The officers then took Sazama to the Greenfield police station about 1 P.M.

While at the police station, Sazama and Butynski were interrogated together, at a time when it could have been found that neither was under arrest.  A Lieutenant McQueen testified that Butynski then told him that "he and the owner of the machine split the proceeds 50–50," whereupon Sazama told Butynski to "keep still."  Subject to Sazama's exception, the trial judge permitted the questions eliciting these answers and refused to strike out the answers.  Lieutenant McQueen also testified, subject to Sazama's exception, that Butynski, answering a further question, stated in substance that he and Sazama shared losses equally.

At this time, Sazama said to Butynski, "[K]eep your mouth shut; wait till the lawyer gets here."

Lieutenant McQueen further testified, but apparently without objection or exception by Sazama, that he informed Sazama that he was not under arrest and said to him, "I am accusing you of a crime, namely, conducting a lottery, what do you have to say?" and that Sazama answered, "I have been advised not to say anything." A Lieutenant Anderson testified, subject to Sazama's exception, that Butynski said in Sazama's presence that Sazama owned the machine, and that Sazama was asked whether pay-offs were made, but that "Sazama stated that he refused to say anything on advice of counsel."

At the time of the arrest Sazama told the arresting officer that he refused to state "whether . . . [he] was the owner of the machine . . . and that the . . . [officer] should speak to . . . [his, Sazama's] attorney who was then present." The arresting officer then asked Sazama how he split the proceeds and Sazama replied "One half to the owner and one half to the operator." The officer then asked, "Do you own the machine at the . . . tavern[?]" and Sazama answered that he did. When asked how many he owned, Sazama looked to his attorney, who said "none," and Sazama answered "none." Sazama excepted to the refusal of the judge to strike the testimony of the conversations just mentioned.

This is not a case where a criminal defendant, either prior to or after arrest, remained completely silent in the presence of a person making accusations against the defendant, concerning matters within the defendant's knowledge, which the defendant heard and understood and which it would have been natural for him to deny. See, as to such cases, *Commonwealth* v. *Kenney,* 12 Met. 235, 237; *Commonwealth* v. *Harvey,* 1 Gray, 487, 489; *Commonwealth* v. *Boris,* 317 Mass. 309, 317–318. If Sazama had definitely denied these statements and accusations, they would have been "nothing but incompetent hearsay," clearly inadmissible against him since there was no acquiescence in them on his part. *Com-*

monwealth v. *Twombly,* 319 Mass. 464, 465. See *Commonwealth* v. *Locke,* 335 Mass. 106, 115; McCormick, Evidence, § 247; Maguire, Adoptive Admissions in Massachusetts, 14 Mass. L. Q. (No. 6) 62, 73 et seq. See also Wigmore, Evidence (3d ed.) §§ 1071–1072. Sazama's actual comments, however, to the extent that they were evasive or equivocal in the face of the accusations and of Butynski's remarks, were admissible if the trial judge determined that the answers were given in response to such implicating accusations or remarks, in fact heard and understood by Sazama. *Commonwealth* v. *Trefethen,* 157 Mass. 180, 197–198. *Commonwealth* v. *Hamel,* 264 Mass. 564, 569. *Commonwealth* v. *Valcourt,* 333 Mass. 706, 716. *Commonwealth* v. *Reynolds,* 338 Mass. 130, 135.

It is argued in effect that it is unreasonable to draw any inference that Sazama was assenting to statements or accusations made in his presence and admitting them, to the extent that he (a) refused to answer on advice of counsel consulted by him in accordance with his constitutional rights, or (b) referred an inquiry to his attorney, or (c) cautioned Butynski to delay making statements until he had advice of counsel. A man, being interrogated under circumstances which reveal that he is suspected of crime, even if not under arrest, certainly may properly assert his constitutional right to consult counsel and may refuse, on the advice of counsel or otherwise, to make statements. See art. 12 of the Declaration of Rights of the Constitution of Massachusetts. He may reasonably fear (without any consciousness of guilt whatsoever) that anything he says will be distorted, misquoted, or used as the basis of argument unfairly. If he tries "to stand clear of all responsibility in relation to whatever might be said" until he has obtained professional advice, or if he acts upon such advice when obtained, "it is obvious that no admission . . . [is] intended, and that none . . . [can] be legitimately deduced from such a forbearance." See *Commonwealth* v. *Harvey,* 1 Gray, 487, 489. A refusal to talk in the absence of counsel, or upon the advice of counsel, is neither a complete denial of a statement

made in a criminal defendant's presence nor absolute silence. It, however, also is not an admission or adoption of the statement but an attempt to assert a constitutional right, which negates any inference of an admission. Such assertions by criminal defendants during police interrogations are not competent testimony against such defendants. *Kelley* v. *United States*, 236 F. 2d 746, 748–750 (Ct. App. D. C.), and cases cited. *People* v. *McGee*, 31 Cal. 2d 229, 238–240. See *People* v. *Hodson*, 406 Ill. 328, 336–338; *State* v. *Dowling*, 348 Mo. 589, 595, 597–600; *State* v. *Bryson*, 47 Del. 106, 109–110; McCormick, Evidence, § 247, at p. 529.

In *Commonwealth* v. *Spiropoulos*, 208 Mass. 71, 73–74, and in *Commonwealth* v. *Aronson*, 330 Mass. 453, 459, answers of a criminal defendant to police interrogation, to the effect that he would not make any statement until he talked with his attorney, were admitted. In *Commonwealth* v. *Goldberg*, 212 Mass. 88, 89, 90–91, it was indicated that such statements could properly have been admitted for a limited purpose. Since the original papers in these cases indicate that no substantial argument on the question of the defendant's rights with respect to consulting or relying on counsel was made to this court, we do not regard these cases as conclusively deciding that a criminal defendant's action on advice of counsel, or his request to have access to counsel, can reasonably be regarded as constituting an adoptive admission or an admission by conduct or equivocation. *Commonwealth* v. *Lucas*, 332 Mass. 594, 597–598, although it quoted the *Aronson* case, is on its facts distinguishable from the *Aronson* case and from the present case. The pressures upon a person being interrogated about a crime, regardless of whether he is under arrest, and the dangers of abuse of such interrogation, are sufficient to lead to great caution in permitting the admission of hearsay evidence resulting from such interrogation on the theory that the person interrogated, by silence or otherwise, has acquiesced in, and therefore admitted, such statements made to him or in his presence. See *Commonwealth* v. *Boris*, 317 Mass. 309, 317; *People* v. *Simmons*, 28 Cal. 2d 699, 718–721. See also

*Refrigeration Discount Corp.* v. *Catino*, 330 Mass. 230, 237–239; Falknor, Evidence, 32 N. Y. U. L. Rev. 512, 518–519; Notes, 40 Minn. L. Rev. 598, 602–607; 29 N. Y. U. L. Rev. 1266, 1274–1275, 1280.

No exception was taken to the admission of Sazama's refusal on advice of counsel to reply to Lieutenant McQueen's direct accusation that Sazama was running a lottery. Sazama's refusal, however, on advice of counsel, to comment upon certain of Butynski's replies to Lieutenant Anderson should have been excluded upon the principles which have been stated above. Such a refusal was not reasonably to be regarded as an admission nor can it be regarded as proof of consciousness of guilt. Similarly Sazama's reference to his attorney of a question asked him by the arresting officer should have been excluded. These erroneous failures to exclude evidence, however, permitted the jury to consider as impliedly admitted only statements which other testimony duplicated. Sazama stated, by affirmative answer to the arresting officer made in his attorney's presence, that he owned the pinball machine and split the proceeds with the operator. This in effect rendered merely cumulative the testimony improperly received. The error, under the circumstances, was not prejudicial as it might well have been if there had been a persistent and consistent refusal by Sazama to speak except in the presence and with the advice of his attorney.

Sazama's advice to Butynski to remain silent and to "wait till the lawyer gets here" was elicited by Butynski's statement relating to the sharing of losses. Sazama's admission that he and the operator shared the machine's proceeds in essence cured any error, if there was error, in permitting Sazama's advice to be received as an implied admission of Butynski's statement. It is not necessary to consider whether, in any event, that advice could reasonably be regarded as going beyond an assertion of Sazama's own constitutional rights and as exhibiting Sazama's apprehension that Butynski's statements (made without asserting the latter's rights) would implicate Sazama in criminal conduct.

*Exceptions overruled.*