COMMONWEALTH vs. PAUL S. REED.

Plymouth. November 5, 1985. — April 29, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Evidence,* Hearsay, Admissions and confessions, Prior convictions. *Error,* Harmless.

At a murder trial, a witness's testimony as to a statement made by the defendant's wife at a time when the defendant was not present could not properly be admitted in evidence against the defendant under the adoptive admission exception to the hearsay rule, and, in the circumstances, the admission of the statement was prejudicial to the defendant's case. [441-443] LYNCH, J., with whom NOLAN, J., joined, dissenting, was of the view that the testimony regarding the wife's statement, although improperly admitted, was merely cumulative and not prejudicial. [445]

In reversing the defendant's conviction in a criminal case tried before this court's decision in *Commonwealth* v. *Maguire,* 392 Mass. 466 (1984), this court did not consider whether the admission in evidence of the defendant's prior criminal convictions for impeachment purposes constituted an abuse of discretion. [444] LYNCH, J., with whom NOLAN, J., joined, was of the view that the circumstances would not have required that this evidence be excluded. [446]

Testimony regarding a telephone conversation between a criminal defendant's wife and another person was not admissible in evidence under the adoptive admission exception to the hearsay rule, where the record did not show that the defendant had heard the conversation or was in a position to reply. [444]

INDICTMENT found and returned in the Superior Court Department on March 24, 1982.

The case was tried before *Augustus F. Wagner, Jr.,* J.

*Walter T. Healy (Roger Witkin* with him) for the defendant.

*Mary Ellen O'Sullivan,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. On November 8, 1981, the body of a young woman was found, strangled to death, in a wooded area of

Middleborough. The defendant, Paul S. Reed, stands convicted of murder in the first degree for the victim's death. Critical to the Commonwealth's case was the evidence provided by one Patton Flannery, an inmate at the Massachusetts Correctional Institution at Bridgewater. Flannery said that the defendant admitted to him that he had killed the victim. At the Commonwealth's urging and over the defendant's timely objection, the judge admitted testimony from Flannery that he (Flannery) had a conversation with the defendant's wife, in the defendant's absence. In that conversation, the defendant's wife told Flannery that the defendant had told her that he (the defendant) had committed the crime. The judge admitted this hearsay evidence as an adoptive admission and in his instructions told the jurors that they could consider the evidence of this conversation as "corroborative evidence." There is no dispute that the judge's ruling is erroneous. At issue is whether the admission of that evidence was prejudicial error. We conclude that the error is prejudicial. Consequently, we reverse and remand for a new trial.

Apart from Flannery's testimony that the defendant admitted to him that he was the culprit, there was evidence that on November 8, 1981, the defendant's wife reported the theft of her automobile to the Bridgewater police. The police recovered the vehicle from an area in Plympton where the defendant frequently went to pick grapes and blueberries. The vehicle had been burned. A State police chemist found traces of rabbit hair in the automobile which were similar to the hairs from a rabbit fur coat worn by the victim and found near her body.

1. *The Conversation as an Adoptive Admission.* On Monday, November 9, 1981, the defendant's wife visited Flannery at M.C.I., Bridgewater.[1] According to Flannery, the defendant's wife said that the defendant told her that he had slain the victim on Saturday, November 7. On Saturday, November 14, 1981, the defendant visited Flannery. Again according to Flannery, and at Flannery's prompting,[2] the defendant told him the

___

[1] The Commonwealth offered evidence of the friendship between Flannery and the defendant's wife.

[2] The defendant, according to Flannery, said that Flannery had "heard it all from Nance" [the defendant's wife].

details of the homicide. In his instructions, the judge told the jury that the evidence of the wife's conversation with Flannery was admitted under the adoptive admission exception to the hearsay rule for the purpose of corroborating the admissions made by the defendant to Flannery. The admission of the conversation between Flannery and the defendant's wife was error.

An adoptive admission is "a statement . . . made in the hearing of another, in regard to facts affecting his rights, and [that person's] reply, wholly or partially admitting their truth." *Commonwealth* v. *Kenney,* 12 Met. 235, 237 (1847). The declaration and the reply are admissible, as an exception to the hearsay rule, because "the *reply* . . . is the act of the party, who will not be presumed to admit any thing affecting his own interest, or his own rights, unless compelled to it by the force of truth; and the *declaration* . . . give[s] meaning and effect to the reply" (emphasis in original). *Id.* See *Commonwealth* v. *Earltop,* 372 Mass. 199, 201-202 (1977); *Commonwealth* v. *Sazama,* 339 Mass. 154, 156-157 (1959); *Commonwealth* v. *Boris,* 317 Mass. 309, 317 (1944); P.J. Liacos, Massachusetts Evidence, 287-289 (5th ed. 1981).

Because the defendant was not present at the conversation between his wife and Flannery, there was no adoptive admission. The evidence was hearsay not within an exception and therefore should not have been admitted. We turn to the question whether the admission of this evidence was prejudicial.

Flannery testified that the defendant made admissions to him; the defendant denied the conversation took place. Thus, the jurors were faced with a classic duel of credibility. The Commonwealth's evidence apart from Flannery's testimony was not decisive of the defendant's guilt, but merely corroborated bits and pieces of Flannery's testimony, or attempted to establish Flannery's reputation for truth and veracity in his community (M.C.I., Bridgewater). A witness for the defendant asserted that he was with Flannery and the defendant on November 14, 1981, and that they did not have a private conversation. Defense witnesses also testified differently from

the Commonwealth's witnesses as to Flannery's reputation for truth and veracity. In these circumstances, testimony by Flannery of a private conversation between the defendant and his wife may have had a decisive bearing on the verdict. Further, the prosecutor, on redirect, had Flannery identify the defendant's wife in the courtroom, thus, perhaps, encouraging the jurors to draw a negative inference from her failure to testify.[3]

In his summation, the prosecutor argued that Flannery's credibility was the critical issue. He reminded the jury that the defendant's wife was the first person to take Flannery "into their confidence about the facts of this murder." The prosecutor then said that, because of the conversation between Flannery and the defendant's wife, the defendant had no choice but to take Flannery into his confidence. We cannot say that the evidence and the prosecutor's argument did not have the effect the Commonwealth intended it to have.

Nor can we say "with fair assurance," that the jury did not attach substantial significance to evidence of a private conversation between husband and wife or that such evidence did not have a substantial impact on the issue of Flannery's credibility. We conclude that the defendant has shown that "the error possibly weakened his case in some significant way." *Commonwealth* v. *Schulze,* 389 Mass. 735, 741 (1983).[4]

---

[3] No jury instruction was requested or given that the wife had a privilege not to testify against her husband. See G. L. c. 233, § 20, cl. Second (1984 ed.).

[4] The United States Supreme Court has stated the rule for nonconstitutional errors in similar terms. "[I]t is not the appellate court's function to determine guilt or innocence. . . . Nor is it to speculate upon probable reconviction and decide according to how the speculation comes out. Appellate judges cannot escape such impressions. But they may not make them sole criteria for reversal or affirmance. Those judgments are exclusively for the jury, given always the necessary minimum evidence legally sufficient to sustain the conviction unaffected by the error. . . . And the question is, not were they [the jurors] right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting. . . . [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the

2. *Other Issues Likely to Recur at a New Trial.*

a. *Evidence of prior convictions.* The defendant filed a motion in limine which sought to bar the introduction of the defendant's prior criminal record for purposes of impeachment. The defendant argues that the admission in evidence of prior convictions gave rise to unfair prejudice which outweighed the probative value of that evidence for impeachment purposes. See *Commonwealth v. Maguire,* 392 Mass. 466, 470 (1984). This case, however, was tried before the *Maguire* opinion was issued. Because we conclude that the defendant is entitled to a new trial on other grounds, we need not decide whether the admission of the defendant's prior convictions constituted an abuse of discretion.[5]

b. *Testimony of James Lawson.* James Lawson, a Bridgewater inmate, testified to a telephone call to the defendant's wife. The defendant was in the same room as his wife but neither affirmed nor denied the conversation. Again, on the record before us there is no evidence that the defendant heard the conversation or that he was in a position to make a reply. This conversation is not admissible. See *supra* at 442. "We are not inclined to extend the scope of the doctrine of admission by silence." *Leone* v. *Doran,* 363 Mass. 1, 16 (1973).[6]

---

whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." (Citations omitted, footnotes omitted.) *Kotteakos* v. *United States,* 328 U.S. 750, 763-765 (1946).

[5] The judge, of course, may condition the exclusion of such records by requiring similar restraint by defense counsel. See *Commonwealth* v. *Knight,* 392 Mass. 192, 194 n.1 (1984).

[6] The defendant also challenges testimony by Flannery of threats against him. The defendant opened up the issue of threats on cross-examination. The judge permitted further testimony as to the threats on redirect examination. There was no error. "The purpose of redirect examination is to explain or rebut adverse testimony or inferences developed during cross-examination. . . . The subject matter of the [threats] . . . was opened up in cross-exami-

The judgment is reversed, the verdict set aside and the case remanded to the Superior Court for a new trial.

*So ordered.*


LYNCH, J. (dissenting, with whom Nolan, J., joins). I respectfully dissent. I agree that Flannery's testimony regarding statements by Nancy Reed should not have been admitted. Although that testimony should have been excluded, I believe that no prejudice resulted. This is so because the defendant testified and denied that he ever made either statement. If the jury were willing to believe that the defendant himself confessed to Flannery, then that was enough evidence. If they chose to disbelieve Flannery's testimony on that point, then surely they would have rejected Flannery's testimony regarding the statements of Nancy Reed. As Judge Learned Hand put it, "[i]f, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court." *DiCarlo* v. *United States,* 6 F.2d 364, 368 (2d Cir.), cert. denied, 268 U.S. 706 (1925). As such, the evidence of Nancy Reed's statements could only be cumulative and not prejudicial. See *Commonwealth* v. *Lowe,* 391 Mass. 97, 106, cert. denied, 105 S.Ct. 143 (1984); *Commonwealth* v. *Bongarzone,* 390 Mass. 326, 342 (1983).

My opinion in this regard is fortified by the fact that the judge limited the use of this testimony to corroboration of the defendant's own admissions to Flannery. Thus the statements properly could not have been considered as proof of the matter asserted. In this limited form the evidence pales into insignificance in the face of Flannery's statement that the defendant admitted the crime and the defendant's testimony that he did not.

nation, and therefore an exploration of them on redirect was clearly within" the judge's discretion. (Citation omitted.) *Commonwealth* v. *Hoffer,* 375 Mass. 369, 375 (1978). We add that many of the questions excluded on cross-examination appear to have been excluded because of the form of the questions.

In regard to the admission of the evidence of the defendant's prior convictions, I wish to emphasize that I do not depart from the view I expressed in my concurrence in *Commonwealth v. Elliot,* 393 Mass. 824, 834 (1985): "Evidence of a prior conviction, especially of a violent crime or one involving dishonesty, is probative as to the defendant's credibility as a witness. See Advisory Committee Note to First Draft of Proposed Fed. R. Evid. 609(a), reprinted in 46 F.R.D. 161, 297 (1969) ('A demonstrated instance of willingness to engage in conduct in disregard of accepted patterns is translatable into willingness to give false testimony'). A reasonable basis exists, therefore, for the legislative determination that evidence that the defendant has been found guilty of a failure to conform his conduct to the legal norms of society should be brought to the jury's attention, as an aid in evaluating the defendant's sincerity and reliability as a witness. The judge's role should generally be limited to preventing misuse of the evidence, through appropriate limiting instructions and careful monitoring of the prosecutor's use of the evidence at trial. Only in extreme circumstances, not shown to be present here, would I conclude that the danger of unfair prejudice *required* the exclusion of such evidence" (emphasis in original). *Id.* at 835 (Lynch, J., concurring).